**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **ADVANCED VASCULAR ASSOCIATES,** | |
| *Plaintiff,* | **Case No. 2:25-cv-05068-JDW** |
| v. | |
| **HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY,** | |
| *Defendant.* | |

## MEMORANDUM

Congress enacted the No Surprises Act, 42 U.S.C. § 300gg-111, to take patients out of billing disputes between insurers and out-of-network providers. The statute sets up a detailed process to resolve those disputes, which ends in a binding determination of what the insurer must pay. This case raises the question of what happens when an insurer doesn't honor its statutory obligation. Although Congress made the awards under the Act legally binding, it did not create a mechanism to enforce those awards. Advanced Vascular Associates, having obtained such an award, asks me either to confirm the award under the Federal Arbitration Act or to permit it to assert a claim directly under the NSA. But Congress didn't authorize either step, so I will grant Horizon Blue Cross Blue Shield Of New Jersey's motion for judgment on the pleadings.

## I.    BACKGROUND

### A.    The No Surprises Act

The No Surprises Act ("NSA") governs payment disputes between out-of-network healthcare providers and insurers in certain circumstances. *See* 42 U.S.C. § 300gg-111. Congress enacted the statute to protect patients from unexpected medical bills by removing them from payment disputes and requiring providers and insurers to resolve those disputes among themselves. When the statute applies, a provider may not bill the patient beyond in-network cost-sharing amounts. Instead, the statute establishes a process for determining the amount the insurer must pay the provider. That process begins with an initial payment or denial of payment, followed by a 30-day open negotiation period. *Id.* § 300gg-111(c)(1)(A). If the parties cannot agree during that period, the statute provides a four-day period for either party to initiate an Independent Dispute Resolution ("IDR") process. *Id.* § 300gg-111(c)(1)(B).

The statute directs the Secretary of Health and Human Services, alongside the Secretaries of Labor and Treasury, to certify independent entities to serve as decisionmakers in the IDR process. *Id.* § 300gg-111(c)(4)(A). When initiating an IDR proceeding, the parties may agree upon a specific referee or have HHS assign one. *Id.* § 300gg-111(c)(4)(F). Each party submits a proposed payment amount, and the process involves baseball-style dispute resolution, meaning the referee selects one party's offer as the award. *Id.* § 300gg-111(b)(5). In making its determination, the referee may consider

certain factors that Congress has specified, including the qualifying payment amount and characteristics of the provider and service. However, the referee may not consider other factors, such as the "usual and customary charges, the amount that would have been billed … had [the NSA] not applied, or the payment or reimbursement rate … payable by a public payor," such as Medicare or Medicaid. *Id.* § 300gg-111(c)(5)(C)–(D).

The statute provides that the IDR determination "shall be binding upon the parties" and payment must be made within 30 days. *Id.* § 300gg-111(c)(5)-(c)(6). There are no appeals from this decision, and the IDR determination "shall not be subject to judicial review," except in the limited circumstances described in Section 10(a) of the Federal Arbitration Act. *Id.* § 300gg-111(c)(5)(E). Section 10(a) of the FAA, in turn, provides for vacatur of arbitration awards by district courts in four limited circumstances involving fraud by the parties, bias or misconduct on the part of the arbitrators, or awards that are not legally valid because the arbitrators exceeded their powers or "so imperfectly executed them" that a final award was not made. 9 U.S.C.A. § 10(a). The NSA empowers the HHS, Labor, and Treasury with enforcement authority over the IDR process, including the ability to impose civil monetary penalties. *See, e.g.*, 42 U.S.C. § 300gg-22(b)(2), 42 U.S.C. § 300gg-134(b).

### B.    The Parties' Dispute

Advanced Vascular is an out-of-network provider that furnishes medical services to patients in health plans that Horizon BCBS administered or insured. Advanced Vascular

does not have a network agreement with Horizon that sets reimbursement rates or otherwise governs payment for those services. As a result, when Advanced Vascular treated Horizon-insured patients in circumstances that the NSA covers, that statute governs any payment disputes.

After providing services, Advanced Vascular submitted claims to Horizon for reimbursement. Horizon issued initial payments or denials that Advanced Vascular believed were insufficient. The Parties then engaged in the statute's required open negotiation period but couldn't agree on appropriate payment amounts for a number of claims. Advanced Vascular initiated the IDR process for those claims. For each disputed claim, the Parties submitted competing payment proposals to a certified IDR entity. The IDR entity reviewed the submissions and selected one of the two proposed amounts. For each of the disputes at issue, the IDR entity selected the payment amount that Advanced Vascular proposed. Those determinations established the amounts that Horizon had to pay under the statute.

Despite those determinations, Horizon failed to pay the required amounts. It either underpaid or did not timely pay multiple IDR awards, resulting in more than $300,000 in outstanding amounts owed to Advanced Vascular. Advanced Vascular sought payment following the IDR determinations but did not receive the amounts it believes are due.

Based on those allegations, Advanced Vascular filed this case. In Count I, it seeks confirmation of the IDR determinations, arguing that the IDR is, in essence, an arbitration

award like any other and is subject to enforcement under Section 9 of the FAA. In Count II, it alleges that Horizon violated the NSA by failing to comply with the IDR determinations and seeks to recover the unpaid amounts. Horizon moves for judgment on the pleadings, arguing that neither statute authorizes the relief Advanced Vascular seeks. Advanced Vascular opposes that motion and cross-moves for confirmation of the IDR awards, contending that the IDR determinations are binding and enforceable under the FAA and the NSA. Both motions are ripe for disposition.

## II.   LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court can grant a Rule 12(c) motion "if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law." *Fed Cetera, LLC v. Nat'l Credit Servs., Inc.*, 938 F.3d 466, 470 n.7 (3d Cir. 2019) (quotation omitted). A Rule 12(c) motion "is analyzed under the same standards that apply to a Rule 12(b)(6) motion[,]" construing all allegations and inferences in the light most favorable to the nonmoving party. *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (quotation omitted).

## III.  ANALYSIS

Advanced Vascular's claims depend on whether the IDR determinations qualify as arbitration awards under Section 9 of the FAA and whether the NSA authorizes a provider

to seek judicial relief for noncompliance. Neither is true, so Advanced Vascular cannot prevail in this case.

### A.    Enforceability Of The IDR Award

Section 9 of the FAA sets forth the process by which a party may seek to confirm an arbitration award, but it does not provide a freestanding mechanism for enforcing any binding determination. By its terms, it applies only if "the parties in their agreement have agreed that a judgment of the court shall be entered upon the award." 9 U.S.C. § 9. That requirement makes sense because the FAA rests on the principle that arbitration is a matter of contract and consent. *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019); *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). The statute enforces agreements to arbitrate; it does not create them. And those agreements must be in writing. *See* 9 U.S.C. § 2. Courts therefore require an actual written agreement to arbitrate, and an agreement to permit judicial enforcement of the resulting award, before they will confirm an award under Section 9. Without a written agreement to arbitrate, Section 9 has no application.

The allegations in this case do not satisfy that requirement. Advanced Vascular does not allege any agreement with Horizon to arbitrate disputes or to permit entry of judgment on an arbitration award. To the contrary, it alleges that it is an out-of-network provider and "does not have a network contract with Defendant that would determine or limit payment" for its services. (ECF No. 1 at 2.) It is that non-contract status that triggers the IDR process. The statute directs parties to that process when they lack a contractual

6

mechanism to resolve their payment dispute and cannot reach agreement through negotiation. The Parties therefore did not choose arbitration. Federal law required them to participate in a statutory process once negotiation failed.

Section 9 does not reach that kind of proceeding. It applies only where the parties agreed to arbitrate and to permit judicial enforcement of the resulting award. The IDR proceeding did not arise from consent. It arose from statute. Calling it "arbitration" does not change its source of authority. As other courts have recognized, the IDR process is statutorily compelled, not contractual. *See Med-Trans Corp. v. Cap. Health Plan, Inc.*, 700 F. Supp. 3d 1076, 1083 (M.D. Fla. 2023). On these allegations, there is no agreement to arbitrate and no arbitration award within the meaning of the FAA. I therefore lack the necessary authority to confirm an IDR award under the FAA.

Advanced Vascular's arguments do not persuade me otherwise. It argues that Congress must have intended to permit confirmation of an award under the FAA because otherwise IDR awards would be "meaningless." (ECF No. 20-3 at 9.) However, just because they are not subject to confirmation under the FAA does not make the awards meaningless. Maybe an award permits garnishment or other collection efforts. Or maybe it just triggers the threat of administrative penalties to compel compliance. I don't have to determine the full panoply of rights that an award confers on a recipient or the consequences from nonpayment. I do have to determine whether the NSA alters Section 9 of the FAA in a way that would permit confirmation even though an IDR award does not

7

fit the literal language of Section 9. Nothing in the NSA does that, so confirmation is therefore not appropriate.

Advanced Vascular also complains that the administrative remedies under the NSA are "inadequate." (*Id.* at 14.) But that's not for me to decide. Congress decided how to structure the remedies under the NSA. I can't rewrite it just because Advanced Vascular or some other provider is dissatisfied with Congress's choice. Advanced Vascular's remedy is with Congress, not me, to fix the statute if it thinks there is a problem.

## B.    No Private Right Of Action In The NSA

Although Advanced Vascular asserts a claim under the NSA, the statute's text, structure, and enforcement scheme do not support the private right of action Advanced Vascular seeks to invoke.

### 1.    Express private right of action

"Private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). My task is to interpret the statute Congress enacted to determine whether it displays an intent to create not just a private right but also a private remedy. *Id.* at 286–87. In applying that standard, the Third Circuit requires clear evidence that Congress intended to create both. *See McGovern v. City of Philadelphia*, 554 F.3d 114, 116 (3d Cir. 2009). Absent that intent, a cause of action does

not exist, and courts may not supply one, no matter how consistent such a remedy might appear with the statute's broader purposes.

The NSA does not reflect that intent. It imposes obligations on the parties and makes IDR determinations binding, but it limits the role courts may play in that process. The statute provides that an IDR determination "shall not be subject to judicial review, except" in the narrow circumstances described in Section 10(a) of the FAA. 42 U.S.C. § 300gg-111(c)(5)(E). Congress thus addressed judicial involvement directly and chose to confine it, permitting courts to set aside IDR determinations in limited circumstances and no more.

The statute's omissions reinforce that choice. Under the FAA, judicial review includes not only vacatur, but also confirmation, enforcement, and entry of judgment on an award. *See Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 578 (2008). Yet in drafting the NSA, Congress incorporated Section 10(a) of the FAA, which governs vacatur, but did not incorporate Section 9, which governs confirmation. By incorporating only Section 10(a), Congress authorized one form of judicial review and excluded others, including confirmation and enforcement.

Advanced Vascular attempts to avoid that conclusion by distinguishing between judicial "review" and judicial "enforcement." It contends that the statute bars only reconsideration of the merits of an IDR determination, not actions that accept the determination as binding and compel compliance. But that distinction does not hold. An

action to confirm or enforce an award is itself a form of judicial review because it invokes the Court's authority to recognize and give legal effect to the determination. The statute permits only the limited forms of review Congress identified. *See Guardian Flight, LLC v. Heath Care Service Corp.*, 140 F.4th 271, 275–76 (5th Cir. 2025); *Mod. Orthopaedics of N.J. v. Premera Blue Cross*, 2025 WL 3063648, at *12 (D.N.J. Nov. 3, 2025). The NSA therefore does not provide an express private right of action to confirm or enforce an IDR determination.

Notably, the Fifth Circuit reached the same conclusion after undertaking the same analysis in *Guardian Flight*. Having reviewed the decision, I find its analysis (which mirrors my own) to be persuasive, and I will adopt it. Advanced Vascular's only response is that the case is from out-of-circuit and not binding. That's true, but it's also true of the cases on which Advanced Vascular relies. In my opinion, the analysis in *Guardian Flight* is more persuasive, though, because the cases on which Advanced Vascular relies stray too far from the statutory language. *See, e.g., Guardian Flight LLC v. Aetna Life Ins. Co.*, 789 F. Supp.3d 214, 227 (D. Conn. 2025).

### 2. Implied private right of action

Where a statute contains no express private right of action, courts presume that Congress did not intend to create one. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 67 (2001). In determining whether a private right of action exists under a federal statute, courts in the Third Circuit evaluate "(1) whether Congress intended to create a personal

right in the plaintiff; and (2) whether Congress intended to create a personal remedy for that plaintiff." *McGovern*, 554 F.3d at 116 (citation omitted). A plaintiff must demonstrate both elements for a court to conclude that a federal statute creates an implied private right of action. *McGovern*, 554 F.3d at 116.

As to the first prong, the "shall be binding" and "shall be made" language of the No Surprises Act creates a personal right for Advanced Vascular. *See Mod. Orthopaedics*, 2025 WL 3063648, at *8-9. The statute imposes a concrete obligation on the parties and entitles the prevailing party in the IDR process to payment. But that is only half the inquiry. As to the second prong, the statutory text and broader scheme reflect Congress's intent not to create a judicial remedy to enforce that right.

Congress chose to incorporate Section 10(a) of the Federal Arbitration Act, which permits courts to vacate IDR determinations in narrow circumstances, but it did not incorporate Section 9, which governs confirmation and enforcement. By incorporating only Section 10(a), Congress authorized courts to set aside IDR determinations but declined to authorize courts to confirm or enforce them. That choice indicates that Congress did not intend for federal courts to play a role in enforcing IDR awards. When Congress includes one provision from a statutory scheme but omits another closely related one, courts presume the omission was intentional. *See Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019). Courts may not supply that omission under the guise of interpretation. To do so would not construe the statute but expand it. When Congress drafted the NSA, it

knew how to permit judicial confirmation of awards because it had done so before. *See* 5 U.S.C. § 580(c). Its decision not to do so in this case demonstrates its intent not to permit such confirmation.

The statute's alternative enforcement scheme reinforces that conclusion. Congress assigned enforcement authority of the NSA to federal agencies, including the power to investigate violations and impose civil monetary penalties. *See* 42 U.S.C. § 300gg-22. That allocation reflects a policy choice about how the statute should operate. When Congress provides a specific method of enforcement, courts should not infer additional ones. *See Sandoval*, 532 U.S. at 290; *see also Transamerica Mortg. Advisors, Inc. v. Lewis,* 444 U.S. 11, 20 (1979). Recognizing a private right of action under the NSA would alter that scheme and expand the role of courts beyond what Congress authorized. *See Freeman Pain Inst. v. Horizon Blue Cross Blue Shield of N.J.,* 2025 WL 3268289, at *6 (D.N.J. Nov. 24, 2025).

Advanced Vascular points to the statute's mandatory language and its designation of IDR determinations as binding to argue that Congress must have intended those determinations to be judicially enforceable. But mandatory language does not, by itself, create a private remedy. *See Sandoval*, 532 U.S. at 289. It may establish an obligation, but it does not answer the separate question of who may enforce that obligation and where that obligation may be enforced. That question turns on congressional intent, not on the strength of the obligation alone.

The NSA statute answers that question by limiting judicial involvement and relying instead on administrative enforcement. Congress may have determined that administrative enforcement, coupled with limited judicial review, was sufficient to ensure compliance. It is well within Congress's authority to rely on that approach, even if it results in an asymmetrical system in which courts may vacate IDR determinations but may not enforce them. The possibility that a different enforcement scheme might provide more robust enforcement does not permit the Court to adopt it. The Court's role is to apply the statute as written, not to expand it.

## IV.   CONCLUSION

Congress made IDR determinations binding, limited judicial review to narrow circumstances, and created an administrative enforcement scheme. It did not authorize courts to confirm or enforce those determinations under the FAA, and it did not create a private cause of action to compel payment of the IDR arbitration awards. Because the statute forecloses Advanced Vascular's claims, I will grant Horizon's motion for judgment on the pleadings and deny Advanced Vascular's cross-motion and motion to stay discovery. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

April 7, 2026